IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROSEMARY SUSKO, an individual
and d/b/a ROSEMONT MANOR,

      Plaintiff,

v.                                  Civil Action No. 5:09CV1
                                              (STAMP)

CITY OF WEIRTON, MARK HARRIS,
WILLIAM MILLER, ROD ROSNICK,
JIM McHENRY, GARY DUFOUR,
ETHEL YEAGER, Executrix of the
Estate of JOHN YEAGER, deceased,
DEWEY GUIDA, TOM VIRTUE,
BOB ARANGO and BOB MRVOS,

      Defendants.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

I.  <u>Procedural History</u>

On January 7, 2009, the plaintiff filed a <u>pro se</u>[1] complaint against the defendants relating to the revocation of a zoning permit issued by the City of Weirton to the plaintiff for the operation of a bed and breakfast facility.[2] The defendants filed a motion to dismiss, which was denied by this Court based upon the fact that further discovery was necessary to determine whether the defendants' various defenses barred the plaintiff's claims. The

---

[1] "<u>Pro se</u>" describes a person who represents himself in a court proceeding without the assistance of a lawyer. <u>Black's Law Dictionary</u> 1341 (9th ed. 2009).

[2] The plaintiff proceeded <u>pro se</u> until January 10, 2011, after the summary judgment motions had been fully briefed, when Paul J. Harris and Shawn L. Fluharty filed a notice of appearance to act as counsel for the plaintiff.

defendants then filed an answer to the complaint. Next, the defendants filed a motion for summary judgment based upon pro se representation of a corporation, which this Court denied due to the fact that it could not, with certainty, determine whether the plaintiff was a proper party in this case. After conducting additional discovery, the defendants filed two separate motions for summary judgment on November 22, 2010: the first by defendant Ethel Yeager, as Executrix of the Estate of John Yeager, and the second filed by all of the defendants. The plaintiff then filed a response on December 10, 2010, titled "Plaintiff's Motion Opposing Defendants' Motion for Summary Judgment," and the defendants filed two replies -- one by defendant Yeager and the other by all defendants. For the reasons set forth below, both the defendants' motions for summary judgment are granted.

## II. Facts

Plaintiff Rosemary Susko ("Susko") is the sole operator of Rosemont Manor, a lodging and meeting facility located in Weirton, West Virginia. The City of Weirton ("City") granted Susko a permit to operate the facility as a bed and breakfast and a wedding/reception facility. Thereafter, however, City of Weirton officials learned that Susko was advertising Rosemont Manor on a website known as "OurHouseOnTheHill.com" for un-permitted, non-zoned, sexually-oriented activities. The City issued a notice of

violation, but when Susko did not cease the unauthorized activity, her zoning permit was revoked.

Susko appealed the decision to the Board of Zoning Appeals, which upheld the revocation, and then to the Circuit Court of Hancock County, West Virginia. The Circuit Court concurred in the decision of the Board of Zoning Appeals.[3] The Supreme Court of Appeals of West Virginia declined Susko's petition for appeal.

Now, Susko, as an individual and doing business as Rosemont Manor, brings suit in this Court pursuant to 42 U.S.C. § 1983, alleging that the defendants, acting under City zoning law, deprived her of her right to property secured by the Fourteenth Amendment, the right to free speech and association under the First Amendment, and the right to unburdened commerce secured by Article 1 of the United States Constitution.

### III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[3]Civil Action No. 07-P-18R.

3

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718-19 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). Further, when evaluating an assertion of qualified immunity under summary judgment, a court must take all facts "'in the light most favorable to the party asserting the injury.'" <u>Clem v. Corbeau</u>, 284 F.3d 543, 550-51 (4th Cir. 2002) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)). "The burden of proof and persuasion with respect to a claim of qualified immunity is on the defendant official." <u>Wilson v. Kittoe</u>, 337 F.3d 392, 397 (4th Cir. 2003) (citing <u>Gomez v. Toledo</u>, 446 U.S. 635, 640-41 (1980)).

## IV.  Discussion

### A.  Yeager's Motion for Summary Judgment

In her motion for summary judgment, Ethel Yeager, as Executrix of the Estate of John Yeager, argues that the plaintiff's claims against John Yeager, the former City Attorney for the City of Weirton, are barred by the litigation privilege.  The complaint alleges that John Yeager, in his capacity as City Attorney, violated the plaintiff's constitutional rights by approving and overseeing the City's zoning application policy.  The plaintiff also claims that John Yeager allowed the City of Weirton to wrongfully revoke her zoning permit and business license.  Ethel Yeager argues that the plaintiff has failed to provide any evidence to support these claims.  Additionally, Ethel Yeager contends that because John Yeager's actions in this matter were solely related to his legal representation of the City of Weirton in his capacity as City Attorney, the litigation privilege bars this civil action against him.

The plaintiff's response to defendant Yeager's motion for summary judgment does not address Yeager's litigation privilege argument.  Rather, the plaintiff states that she does not oppose a finding of qualified immunity for the individual defendants, except for defendants Rosnick and McHenry.  Because the plaintiff failed to respond to the arguments presented in her motion for summary

judgment, Ethel Yeager contends that the plaintiff is not opposed to summary judgment as to John Yeager.

Even though the plaintiff's opposition to the motion for summary judgment is unresponsive to defendant Yeager's arguments, this Court must review the motion in its entirety to determine whether Yeager is entitled to summary judgment. Susko's failure to adequately respond does not relieve Yeager from the burden imposed upon it as the moving party. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 516 (4th Cir. 1993)

> Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to "a judgment as a matter of law." The failure to respond to the motion does not automatically accomplish this. Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.

Id. For the reasons described below, this Court finds that Ethel Yeager is entitled to summary judgment.

    1.    Litigation Privilege

"[T]he litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action." Clark v. Druckman, 624 S.E.2d 864, 871 (W. Va. 2005). "Further, the litigation privilege generally operates to preclude actions for civil damages arising

from an attorney's conduct in the litigation process." Id. at 872. "[The litigation privilege] extends to all statements or communications in connection with the judicial proceeding . . . as long as the communications are related to the prospective judicial action." Collins v. Red Roof Inns, Inc., 566 S.E.2d 595, 600 (W. Va. 2002) (quoting Hawkins v. Harris, 661 A.2d 284, 289 (N.J. 1995)).

In this case, all actions and communications of John Yeager related to this matter were performed in his role as the City of Weirton's City Attorney, and the plaintiff has presented no evidence to the contrary. In fact, the plaintiff acknowledges in her complaint that Yeager implemented, approved, and oversaw the City's zoning application policy in his role as the chief legal officer for the City. Compl. ¶ 172. Therefore, John Yeager is entitled to absolute immunity, and Ethel Yeager is entitled to summary judgment.

2. Survival of the Claim[4]

Even if the litigation privilege did not apply to John Yeager, the plaintiff's claim against him would not survive his death. Federal courts look to state law in determining whether § 1983 claims survive the death of a defendant, provided that state law is not inconsistent with federal law. See Robertson v. Wegmann, 436

_____

[4]Although the parties did not raise it in their pleadings, this Court finds it necessary to address the issue of survivability.

8

U.S. 584, 589 (1978). In this case, the plaintiff's state law claim against John Yeager would likely be construed as a malicious prosecution claim. West Virginia case law provides that "[a] cause of action for malicious prosecution does not, under the common law or by statute, survive against the personal representative, unless as a result thereof property is acquired by the wrongdoer which enures to his benefit or enhances the value of the estate in the hands of his personal representative." Woodford v. McDaniels, 81 S.E. 544, syl. (W. Va. 1914). Because the value of John Yeager's estate has not been enhanced in any way as a result of this civil action, a malicious prosecution claim against him would not survive against Ethel Yeager. Thus, the plaintiff's § 1983 claim does not survive John Yeager's death.

    3.   Qualified Immunity

This Court further finds that even if the litigation privilege did not apply and even if the plaintiff's claim against John Yeager survived his death, Yeager would be entitled to qualified immunity. In fact, the plaintiff conceded this point in her opposition to the motion for summary judgment.

Under Saucier v. Katz, 533 U.S. 194, 201 (2001), analysis of a qualified immunity defense requires a two-part inquiry.[5] The

_____

[5]Prior to the United States Supreme Court's decision in Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009), lower federal courts were required to follow a rigid two prong test for determining the existence of qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). Under that test, a court first looks to

first question is whether the facts alleged, when viewed in the
light most favorable to the injured party, "show the officer's
conduct violated a constitutional right." Id. If the facts
alleged fail to make this showing, the inquiry is at an end, and
the official is entitled to summary judgment. Id. If, however,
the facts alleged do show a constitutional injury, the second
question is whether the constitutional right was clearly
established at the time of the violation. Id. Qualified immunity
is abrogated only upon a showing that the officer's conduct
violated a constitutional right and that such right was clearly
established at the time the conduct occurred. Id.

Because the plaintiff does not oppose a finding of qualified
immunity for defendant Yeager, this Court need not proceed to the
two step analysis. However, even if this Court did conduct an
inquiry under Saucier, it would be unnecessary to proceed past the
first step, as the facts alleged do not show that Yeager's conduct
violated a constitutional right. Yeager was a government official

---

whether the officer's conduct violated a constitutional right,
followed by an analysis of whether the constitutional right was
clearly established at the time of the violation. Id. The Pearson
court found shortcomings in the Saucier analysis. Pearson, 129 S.
Ct. at 818-21. "Adherence to Saucier's two step protocol departs
from the general rule of constitutional avoidance and runs counter
to the older, wiser judicial counsel not to pass on questions of
constitutionality unless such adjudication is unavoidable." Id. at
821 (internal quotations omitted). The Supreme Court, though,
found that the Saucier procedure was often advantageous, and left
open to district courts the "order of decisionmaking [that] will
best facilitate the fair and efficient disposition of each case."

performing discretionary functions to counsel the City of Weirton in the enforcement of the City's zoning laws -- he did not knowingly violate the law nor was he plainly incompetent; thus, he is shielded from liability. See Malley v. Briggs, 475 U.S. 335, 341 (1986). The plaintiff offers no evidence in support of her claim that Yeager "invented" the zoning policy in order to deny her the right to use her property. Instead, the facts reveal that the plaintiff's zoning permit was properly revoked as a result of her use of the property for activities outside the scope of the permit.

B.  Defendants' Motion for Summary Judgment

The defendants' motion for summary judgment presents numerous arguments in support of their contention that no genuine issue of material fact exists. This Court addresses each of those claims in turn, and finds that the defendants are entitled to summary judgment.

1.  Municipal Liability Under Section 1983

In her complaint, the plaintiff asserts that representatives of the City of Weirton erroneously applied the Unified Development Ordinance ("UDO") to her property instead of the previous zoning law. The plaintiff further alleges that the City's policies negatively impacted her current business and her ability to develop future business. In their motion for summary judgment, the defendants contend that the plaintiff can point to no policy or

custom of the City of Weirton that led to the violation of the plaintiff's constitutional rights.

In response, the plaintiff argues that the approval by the Zoning Board of Appeals of the administrative decision to revoke the plaintiff's zoning permit constitutes an unconstitutional policy that satisfies the requirements of <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978), such that the City should be held liable. The plaintiff claims that the City of Weirton's knowledge, acquiescence, and approval of her zoning permit revocation subjects the City to municipal liability.

A plaintiff may directly sue a local governing body pursuant to § 1983 for constitutional violations. <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978). However, the plaintiff is required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" in order to ensure "that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 403-04 (1997). An act "not formally approved by an appropriate decisionmaker," but performed pursuant to a "custom," may "subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Id.</u> at 404.

12

This Court finds no proof of any policy or custom that would subject the City of Weirton to § 1983 liability. The revocation of the plaintiff's zoning permit was the result of her use of Rosemont Manor for purposes outside the scope of the zoning permit in violation of the UDO, not a City policy or custom.[6] The plaintiff's permit was approved for a bed and breakfast/wedding and reception facility, but the record reveals that the plaintiff had expanded the use of Rosemont Manor to include activities prohibited by her permit.[7] Judge Arthur M. Recht's order of May 21, 2008 confirmed that the plaintiff's use of her property had exceeded the scope of the zoning permit. The Circuit Court order provides that while the plaintiff could continue to operate Rosemont Manor in accordance with her zoning permit, she could not conduct any

_____

[6]The plaintiff also claims that the City of Weirton mistakenly applied the UDO, which became effective on September 11, 2005, to the plaintiff's business, which was granted the zoning permit on June 30, 2004 under the prior zoning ordinance. This Court finds that the plaintiff's argument that the UDO was not applicable to her business is without merit, as the UDO was enacted to replace the previous City zoning ordinance and governs "the land use, subdivision and development activities proposed, planned, and conducted on parcels of land located within the corporate boundaries of the City of Weirton, West Virginia." Defs.' Mot. Summ. J. Ex. R.

[7]These activities included clothed/naked female/male events, munches, nudists, swingers, leather, fem-dom, master/slave, transgender, BDSM, fetish, play space, seminars, demonstrations, and other sexually oriented events. The plaintiff's website and calendar of events on the website verified that these events were being held at Rosemont Manor.

activities that were included, advertised, and marketed on the OurHouseontheHill.com website. Defs.' Mot. Summ. J. Ex. O.[8]

While the plaintiff claims that the City of Weirton invented a zoning policy in order to revoke her zoning permit, in reality, the City simply applied the UDO and properly revoked the plaintiff's permit due to uses of the property that exceeded its scope.[9] The zoning application required that the plaintiff notify the City of each and every intended use of the property, yet she only informed the City that she used the property as a bed and breakfast facility and wedding/reception center. The website, however, clearly shows that Rosemont Manor held other types of events. For these reasons, the City of Weirton faces no municipal liability and is entitled to summary judgment.

    2. <u>Individual Defendants</u>

In her complaint, the plaintiff alleges that the individual defendants acted "under the color of zoning law" to deprive her of her constitutional rights. In their motion for summary judgment, the defendants contend that a suit against public officials

---

[8]Judge Recht issued his ruling on the plaintiff's administrative appeal of the City of Weirton Zoning Board of Appeals' decision to rescind the plaintiff's zoning variance and business license to operate Rosemont Manor.

[9]This Court finds that the undisputed reason for the permit revocation was that activities were occurring at Rosemont Manor that were outside the scope of the zoning permit. The fact that these activities catered to a specific gender or lifestyle had no bearing on the decision to revoke the plaintiff's zoning permit.

14

performing their public functions is inappropriate. Further, even if the plaintiff had made claims against the defendants in their individual capacity, each defendant is entitled to qualified immunity. In response, the plaintiff concedes that all of the individual defendants, except for Rosnick and McHenry, are entitled to qualified immunity.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity." Kentucky v. Graham, 473 U.S. 159, 169 (1985) (citing Cory v. White, 457 U.S. 85, 90 (1982); Edelman v. Jordan, 415 U.S. 651, 663 (1974)). In the present case, the defendants are city officials who were working in such capacity with regard to the claims of the plaintiff. Specifically, the defendants were implementing and enforcing the zoning laws of the City of Weirton. Thus, the plaintiff's claims against the individual defendants in their official capacity is improper. See Harlow v. Fitzgerald, 457 U.S. 800, 801 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."). Because the plaintiff concedes that most of the individual defendants are entitled to qualified immunity, this

15

Court will only discuss the claims against defendants Rosnick and McHenry.

The plaintiff argues that Rosnick and McHenry are not entitled to qualified immunity because their actions were unreasonable. Specifically, the plaintiff alleges that no reasonable zoning official in Rosnick's position, the Chief Code Officer for the City of Weirton, would require that all pre-existing non-conforming uses be listed on the zoning application. According to the plaintiff, a reasonable zoning official in McHenry's position, the UDO Administrator for the City of Weirton, would not revoke a zoning permit based solely upon information on the internet. In response, the defendants maintain that Rosnick and McHenry are also entitled to qualified immunity.

As discussed above, qualified immunity is abrogated only upon a showing that the officer's conduct violated a constitutional right and that such right was clearly established at the time the conduct occurred. <u>Saucier</u>, 533 U.S. at 201. Further, "qualified immunity . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Malley</u>, 475 U.S. at 341. Rosnick's interpretation of the notation "wed/rec center" on the plaintiff's zoning application to mean receptions following weddings is not clearly incompetent, nor was it an unlawful act. Qualified immunity is not abrogated as to Rosnick simply because the plaintiff failed to indicate on her zoning

application all of her intended uses for her property. Rosnick reviewed the zoning permit in its entirety and reasonably determined that it would only be operated as a bed and breakfast and wedding/reception facility. Thus, Rosnick is entitled to qualified immunity.

The plaintiff argues that a reasonable person in McHenry's position would not have applied the UDO. However, the application of the UDO by the UDO Administrator to this zoning issue was completely appropriate and not in violation of clearly established law. The UDO was enacted pursuant to West Virginia Code § 8A-7-1, which states: "(a) The governing body of a municipality or a county may regulate land use within its jurisdiction by: (1) Adopting a comprehensive plan; . . . (3) enacting a zoning ordinance." W. Va. Code § 8A-7-1. Clearly, the UDO applied to the plaintiff's business. While the activities that had been approved for Rosemont Manor under the prior zoning code were grandfathered in under the UDO, the UDO still required the plaintiff to submit an application for the expansion of her zoning permit, which she failed to do. The UDO was properly applied to the plaintiff's business, and thus, McHenry is entitled to qualified immunity.

3. Respondeat Superior

Even if the plaintiff had not acknowledged that defendants Harris, Miller, and DuFour are entitled to qualified immunity, the claims against these defendants would still fail because they are

based on respondeat superior liability. The plaintiff alleges that former Mayor Miller and current Mayor Harris failed to prevent the revocation of her zoning permit. However, Mayor Harris has never worked for the zoning department of the City of Weirton, nor is he responsible for the approval of zoning applications. Former Mayor Miller also testified that his duties did not involve zoning. The defendants submit that neither Miller nor Harris took any action to cause the plaintiff to suffer her alleged constitutional violation as they are not involved in zoning issues. Similarly, the plaintiff claims that defendant DuFour, as City Manager, could have prevented the revocation. Again, there is no evidence that DuFour had any personal involvement in zoning permit revocations.

"[M]unicipal liability under § 1983 may not be predicated solely upon a respondeat superior theory. Liability arises only where the constitutionally offensive acts of city employees are taking in furtherance of some municipal 'policy or custom.'" Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell, 436 U.S. at 694). The plaintiff cannot seek relief for her alleged constitutional violations from the City of Weirton by asserting claims against city employees based upon their supervisory positions alone. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of respondeat superior has no application under [§ 1983]."). And even if she could, it is unclear whether these defendants had supervisory authority over

zoning matters.  Thus, defendants Miller, Harris, and DuFour are entitled to summary judgment.

4.  <u>Res Judicata and Collateral Estoppel</u>

The defendants contend that the plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel because the issues raised in her complaint filed with this Court were already decided by the Circuit Court of Hancock County, West Virginia, and the West Virginia Supreme Court of Appeals refused the plaintiff's petition for appeal.  The plaintiff responds that her constitutional claims were not previously in issue and never directly decided by the Circuit Court, thus they are exempt from the doctrines of res judicata and collateral estoppel.  However, the plaintiff's response also admits that av bll issues, other than the constitutional claims, were dealt with in Circuit Court. Therefore, this Court finds that the plaintiff's zoning claims are barred.

As an initial matter, this Court finds that the plaintiff has misconstrued the holding of the Circuit Court.  According to the plaintiff, the Circuit Court restored her licenses on May 21, 2008, thus proving that the Board of Zoning Appeals was wrong in its factual findings.  In reality, Judge Recht held that the plaintiff could continue to operate Rosemont Manor as a bed and breakfast facility and a wedding/reception center, but also specifically stated that the plaintiff could <u>not</u> continue to conduct the

19

activities that had been previously advertised and marketed on the OurHouseontheHill.com website.  Despite this ruling, the plaintiff continued to operate Rosemont Manor in a way that conflicted with the Circuit Court's order.

"Preclusion doctrine encompasses two strands: res judicata and collateral estoppel.  Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties."  <u>Sartin v. Macik</u>, 535 F.3d 284, 287 (4th Cir. 2008) (citing <u>Thomas M. McInnis & Assocs., Inc. v. Hall</u>, 349 S.E.2d 552, 556-57 (N.C. 1986)).  For res judicata to prevent a party from raising a claim, three elements must be present: '(1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action.'"  <u>Ohio Valley Environmental Coalition v. Aracoma Coal Co.</u>, 556 F.3d 177, 210 (4th Cir. 2009) (quoting <u>Aliff v. Joy Mfg. Co.</u>, 914 F.2d 39, 42 (4th Cir. 1990)).

An examination of these three elements reveals that the plaintiff's claims are, in fact, barred by res judicata.  The first element is satisfied by the order of the Circuit Court -- a judgment that resolved the issue of whether the decision to rescind the plaintiff's zoning variance and business license was appropriate.

The second element is also satisfied, as the two actions involve the same parties, or persons in privity with those parties. The case filed in the Circuit Court of Hancock County named the City of Weirton Zoning Board of Appeals and Dewey Guida, as chairperson of the Board and the City of Weirton, as defendants. In the case before this Court, the plaintiff again named the City of Weirton and Dewey Guida,[10] as well as additional City officials who were involved tangentially, in the plaintiff's zoning dispute. This Court finds that the addition of new defendants is simply another attempt by the plaintiff to sue to the City of Weirton and its officials.

Finally, it is clear that the current action arises from the same controversy as the prior action, thus, the third element of res judicata is met. The plaintiff's claims in both actions are the same, boiling down to allegations that the UDO does not apply, that the plaintiff can use the property for any purpose she deems appropriate, that the City had no proof of non-conforming uses, that advertisement for activities outside the scope of her zoning permit is protected by the First Amendment, and that she suffered constitutional violations pursuant to § 1983 when the City revoked her zoning permit.[11]   All of these issues have been previously

---

[10]Dewey Guida was dismissed from this action by stipulation on October 29, 2010.

[11]In fact, the plaintiff has admitted that the Circuit Court ruled that activities marketed on her website are not protected

adjudicated by the Circuit Court of Hancock County and are thus barred by res judicata.

In West Virginia, "[c]ollateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Holloman v. Nationwide Mut. Ins. Co., 617 S.E.2d 816, 821 (W. Va. 2005) (quoting Dodrill v. Nationwide Mut. Ins. Co., 491 S.E.2d 1, syl. pt. 2, in part (W. Va. 1996)). The West Virginia Supreme Court of Appeals has held that issue preclusion applies where four conditions are shown:

> (1) the issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is involved was party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Arnold Agency v. West Virginia Lottery Comm'n, 526 S.E.2d 814, 827 (W. Va. 1999) (quoting State v. Miller, 459 S.E.2d 114, syl. pt. 1 (W. Va. 1995)). The determination of the issue in the prior proceeding must have been "essential to the judgment" for issue preclusion to apply. Rowe v. Grapevine Corp., 527 S.E.2d 814, 821 (W. Va. 1999).

---

speech or activity. Compl. ¶ 75.

In this case, all four elements of issue preclusion are met. The Circuit Court determined that the plaintiff had expanded her use of Rosemont Manor beyond the scope of her zoning permit. The decision became final when the Supreme Court of Appeals of West Virginia denied her appeal. The plaintiff in the case before this Court also brought the action in the Circuit Court. Finally, the plaintiff had a full and fair opportunity to litigate the issue in the prior action. This Court finds that this action is merely an attempt by the plaintiff to re-litigate issues have already been finalized.

5. Rooker-Feldman Doctrine[12]

The Rooker-Feldman doctrine is "a jurisdictional rule providing that lower federal courts generally cannot review state court decisions." Holliday Amusement v. State of South Carolina, 401 F.3d 534, 537 (4th Cir. 2005). Under the doctrine, "federal district courts are barred from considering issues already presented by a party and decided by a state court and also are barred from hearing Constitutional claims that are 'inextricably intertwined with questions [so] ruled upon by a state court.'" Id. (quoting Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997)). Thus, "the controlling question . . . is whether a party seeks the

---

[12]The parties did not discuss the Rooker-Feldman doctrine in their pleadings. However, because of its jurisdictional nature it can be raised at any point during the proceedings, and this Court considers it sua sponte. See Jordahl v. Democratic Party of Va., 122 F.3d 192, 197 n.5 (4th Cir. 1997).

federal district court to review a state court decision and thus pass upon the merits of that state court decision." Am. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir. 2003) (quoting Jordahl v. Democratic Party of Virginia, 122 F.3d 192, 202 (4th Cir. 1997)).

A federal claim is "inextricably intertwined" with a state court decision if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Id. (quoting Allstate Ins. Co. v. W. Va. State Bar, 233 F.3d 813, 819 (4th Cir. 2000)). Therefore, "a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (internal quotations omitted). Rooker-Feldman is therefore implicated "if in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." Jordahl, 122 F.3d at 202 (internal quotations omitted).

Upon review of the record and the parties' pleadings, this Court concludes that the Rooker-Feldman doctrine applies to this case, and consequently, this Court does not have subject matter jurisdiction. Were this Court to grant the plaintiff relief, it

would effectually overrule the decision of the Circuit Court of Hancock County, as well as the West Virginia Supreme Court of Appeals, which refused the plaintiff's petition for appeal.[13]   The plaintiff has been provided due process and has had an ample opportunity to argue all issues set forth in the current matter, including the constitutional claims and the zoning claims.   The plaintiff's federal action is the functional equivalent of an appeal from the state court decision, and pursuant to the <u>Rooker-Feldman</u> doctrine, this Court will not consider arguments that the state court has already rejected.   See <u>Stillwell</u>, 336 F.3d at 316-17.

    6.   <u>First Amendment Claim</u>

    In her complaint, the plaintiff alleges a § 1983 violation pertaining to her First Amendment right of freedom of speech.  Although the plaintiff claims that she has an absolute right to commercial speech and that the City of Weirton placed unconstitutional restrictions on her speech, the defendants counter that preventing the plaintiff from advertising illegal activities is not a violation of her freedom of speech.

    "To qualify for First Amendment protection, commercial speech must (1) concern lawful activity and (2) not be misleading." <u>Educational Media Co. at Virginia Tech, Inc. v. Swecker</u>, 602 F.3d 583, 588-89 (4th Cir. 2010) (citing <u>Central Hudson Gas & Electric</u>

_____

[13]No. 081947.

Corp. v. Public Service Commission of New York, 447 U.S. 557, 566-68 (1980)).  In this case, the plaintiff's commercial speech is not entitled to First Amendment protection because it involves advertisements for activities that she held at Rosemont Manor that were outside the scope of her permit, thus, they were unlawful. Because the advertisements concerned unlawful activities, they do not qualify for First Amendment protection -- it is unnecessary to determine whether the advertisements were misleading.  As a result, the defendants' motion for summary judgment as to this claim must be granted.

     7.  <u>Real Party In Interest</u>

     The plaintiff filed this complaint as "Rosemary Susko, an individual and d/b/a Rosemont Manor."  But according to the defendants, Rosemont Manor is a limited liability company, not a d/b/a.  Thus, the defendants contend that because the plaintiff's claims relate to the business and not the plaintiff herself, Susko is not the real party in interest.  In response, the plaintiff argues that because she personally suffered bankruptcy from doing business as Rosemont Manor and because Rosemont Manor, LLC has no stake in the outcome of this litigation, she is the real party in interest.

     Rule 17(a)(1) of the Federal Rules of Civil Procedure provides, "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1).  In this case, the

plaintiff registered the business as a limited liability company, the deed for the property is in the name of Rosemont Manor, LLC, and the advertising related to the plaintiff's freedom of speech claims refers to the business. Rosemont Manor, LLC, not Rosemary Susko, is the entity that has a substantial stake in the outcome of this case, thus, Rosemont Manor, LLC is the real party in interest. Therefore, the defendants are entitled to summary judgment on that basis.

## V. <u>Conclusion</u>

For the reasons stated above, defendant Yeager's motion for summary judgment is GRANTED. Further, the defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    January 20, 2011


<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE